[No. B007714. Second Dist., Div. One. Jan. 14, 1986.]

SHIRLEY CURTIS, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF LOS ANGELES COUNTY
EMPLOYEES RETIREMENT ASSOCIATION,
Defendant and Respondent.

COUNSEL

Lemaire, Faunce & Katznelson and Mark Ellis Singer for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Marshall Rose, Deputy County Counsel, for Defendant and Respondent.

OPINION

BAFFA, J.*—Appellant, Shirley M. Curtis, applied to respondent Board of Retirement of the County of Los Angeles Employees Retirement Association (hereinafter Board) for a service connected disability retirement allowance on October 17, 1977. Her application stated that the nature of the injury causing her claimed disability was chronic and acute low back and leg pain and weakness resulting from an auto accident which occurred on June 1, 1976. On October 5, 1978, respondent Board found that the appellant was not disabled for her duties as an eligibility worker II for the County of Los Angeles Department of Public Social Services and denied her request for a service-connected disability retirement allowance. The appellant thereupon requested an administrative hearing to contest the order and finding of respondent Board.

On February 15, 1980, the appellant presented evidence and argument before a hearing officer to prove that she was disabled from performing her duties as an eligibility worker II and that any such disability arose out of and in the course of her employment within the meaning of Government Code section 31720. After consideration of the appellant's testimony and medical reports concerning her condition and other documentary evidence, the hearing officer determined that the appellant had "not carried her burden of demonstrating that the limited incapacity shown disables her from performing the duties of her job as both she and the class specification define them." The hearing officer found that the appellant was not permanently incapacitated for the performance of duty.

The hearing officer's summary of evidence, proposed findings of fact and recommendation were presented to respondent Board on May 7, 1980. After reading the administrative transcript, respondent Board adopted the findings

---

*Assigned by the Chairperson of the Judicial Council.

of the hearing officer and found the appellant to be not disabled, thereby denying her request for a disability retirement. The appellant was so notified on or about May 27, 1980.

On or about March 23, 1983, appellant commenced an action for a writ of mandate to set aside the decision of respondent Board. The matter came on regularly for hearing on October 14, 1983, in Department 86 of the Los Angeles Superior Court, before the Honorable Bruce R. Geernaert, Judge presiding. The trial court expressly determined that the applicable standard of review is the court's independent judgment. The record of the administrative proceedings were received in evidence, all documents and arguments were considered, and the court determined that the weight of the evidence supports the findings of respondent Board and the findings support the conclusions of respondent Board and the writ of mandate was denied. Appellant appeals that order.

Appellant, Shirley M. Curtis, is 50 years old and was first employed by Los Angeles County Assessor's Office on April 1, 1972. On September 17, 1972, appellant went to work for the Department of Public Social Services, 200 East Anaheim Avenue, Wilmington, as an eligibility worker I. Subsequently, she was promoted to eligibility worker II, and carried an extremely heavy caseload of 130 to 150 cases per month.

In her work, appellant verified the continued eligibility of welfare recipients which not only entailed seeing clients at her office, but also at their homes. Appellant was a permittee driver for the county and she drove her car to and from the office. She also drove her car in the field and when she attended training sessions held away from the office.

On June 1, 1976, appellant left the office in Wilmington in her 1972 Chevrolet station wagon and was rearended by another vehicle close to her home while she was stopped at a red light. Appellant injured her foot in the accident and suffered a severe headache; she felt weak and shortly thereafter she developed debilitating headaches and pains in her upper neck.

Appellant was initially treated by Dr. G. H. Gagnon, who diagnosed her injuries as neck strain, moderate to severe, and back strain, mild superimposed and chronic back sprain. Medication, heat and rest were prescribed. Appellant stopped seeing Dr. Gagnon after 30 days and started treating with Dr. Hirabayashi who, after studying X-rays, a myelogram and a venogram, told her she probably had soft tissue injuries to her neck, back and arm.

From mid-June until September 1976 appellant suffered pain and could not work. On September 27, 1976, she returned to work but had to stop on December 28, 1976, under doctor's orders, due to neck and back pains, a

weak and numb feeling and insomnia. She rested at home for an approximate six months period of time.

Appellant returned to work in mid-June 1977 as per Dr. Hirabayashi's instructions but was unable to work because of the pain. Because nothing seems to alleviate her pain, appellant feels she can no longer perform the duties of an eligibility worker II and she has already received a worker's compensation permanent disability rating of 32½ percent. Respondent's referee, after a hearing, found that appellant was not disabled and recommended that appellant's application for a nonservice-connected disability retirement be denied. The respondent accepted the report and adopted the findings of the referee.

■■■ The question before the court in this case is whether substantial evidence supports the respondent's and the trial court's determination that appellant is not disabled. Appellant contends there is not substantial evidence to support respondent's and the trial court's position.

Government Code section 31720, provides in pertinent part as follows: "Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if: (a) [His] incapacity is a result of injury or disease arising out of and in the course of [his] employment. . . ."

When considering appellant's application for disability retirement, respondent is faced with the question of whether or not appellant is permanently incapacitated for the performance of duty and is the permanent incapacity a result of injury or disease arising out of and in the course of appellant's employment. Causation is secondary and the major issue is the question of permanent incapacity, for we need proceed no further if that is lacking.

■■■ By the terms of Government Code section 31720, the appellant need be incapacitated only for performance of duty and it is not enough to disqualify appellant to show that she is able to do some other kind of job than she has been working in the county.

■■■ The court in *Mansperger* v. *Public Employees' Retirement System* (1970) 6 Cal.App.3d 873, 876-877 [86 Cal.Rptr. 450], in a case involving injuries to a game warden's arm that he contended made him physically incapacitated from performing his duties, stated as follows: "We hold that to be 'incapacitated for the performance of duty' within section 21022 means the *substantial* inability of the applicant to perform his usual duties. [¶] While it is clear that petitioner's disability incapacitated him from lifting

or carrying heavy objects, evidence shows that the petitioner could substantially carry out the normal duties of a fish and game warden. The necessity that a fish and game warden carry off a heavy object alone is a remote occurrence. Also, although the need for physical arrests do occur in petitioner's job, they are not a common occurrence for a fish and game warden. A fish and game warden generally supervises the hunting and fishing of ordinary citizens." (Italics in original.)

Appellant argues that pension laws are to be liberally construed, resolved all ambiguities in favor of the appellant. (*Gorman* v. *Cranston* (1966) 64 Cal.2d 441 [50 Cal.Rptr. 533, 413 P.2d 133]; *Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815 [111 Cal.Rptr. 841].) ■ The object of the disability allowance is not solely to compensate a member with a pension. The disability retirement allowance has as its objective the effecting of efficiency and economy in public service by replacement of employees, without hardship or prejudice, who have become superannuated or otherwise incapacitated. ■ Therefore, the primary test before us is whether petitioner is substantially incapacitated from the performance of duty, and the rule of liberality of construction does not change that test. (*Mansperger* v. *Public Employees' Retirement System, supra,* 6 Cal.App.3d 873.)

It is the Board which must determine whether an applicant is permanently incapacitated for the performance of duty. (Gov. Code § 31725; *McGriff* v. *County of Los Angeles* (1973) 33 Cal.App.3d 394 [109 Cal.Rptr. 186].) ■ It is a question of fact to be determined from the evidence presented. (*Sweeney* v. *Industrial Acc. Com.* (1951) 107 Cal.App.2d 155 [236 P.2d 651].) ■ The record reflects the hearing officer, in his review of the evidence, especially the medical testimony, stated that appellant is not substantially unable to perform her usual duties which do not include the activities which doctors warn she cannot do; heavy lifting, repeated bending and stooping. The testimony of Doctors Hirabayashi and Phillips was particularly impressive since it was submitted by appellant.

Further, the hearing officer stated that only Dr. Ambrus, among all the doctors, was of a contrary opinion, and while the opinion of one expert may be the basis of a finding, even in the face of considerable opinion to the contrary, there is no reason shown in this record as to why the opinion of three other experts should be disregarded.

■ Appellant contends that medical reports of Dr. Collin S. Cho, Dr. Alexander Lotteri, Dr. Myron H. Marshall and John F. Tholen, Ph.D., should have been considered by the trial court since they relate to appellant's condition after the hearing by respondent and before the trial court rendered its decision. Appellant cites Code of Civil Procedure section

1094.5, subdivision (e) and argues since this evidence could not have been produced in the hearing before respondent the trial court should have considered it in connection with appellant's motion for a writ of mandate or remanded the matter back to respondent.

The court, in the *Windigo Mills* v. *Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586, 596-597 [155 Cal.Rptr. 63], states as follows: "When the Legislature granted the superior court the discretion to receive 'relevant evidence which, in the exercise of reasonable diligence, could not have been produced at the administrative hearing,' it reasonably may be inferred that it meant to authorize the receipt of evidence of events which took place after the administrative hearing. *Mobil Oil Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 293 . . . (hg. den.) supports this view. There, the trial court had entered an order limiting the oil company's right of discovery in an administrative mandamus action to acts occurring *before* the date of the administrative hearing. The Court of Appeal issued a writ of prohibition striking the portion of the order limiting discovery to prior events, holding that '[e]vidence of acts, data, reports and other evidence *within the limits of section 1094.5, subdivision (d)* [now subd. (e)] is admissible regardless of whether it deals with events which occur before or after the date of the administrative hearing' . . . ." (Italics in original.) We conclude that the superior court is authorized under section 1094.5, subdivision (e) to receive relevant evidence of events which transpired after the date of the agency's decision.

By way of footnote 4, page 597, the court further states: "This does not mean that the trial court should admit such evidence in all cases. In keeping with the principle that the administrative agency should have the first opportunity to decide the case on the basis of all of the evidence, the better practice might be to remand the action for agency redetermination in the light of the new evidence, particularly where the evidence would have been crucial to the administrative decision." We agree with this position, particularly where the hearing officer made inference to appellant's one expert supporting her arguments as opposed to three experts who took a contra position. The matter is therefore remanded to respondent with instruction to consider all relevant reports and evidence.

Spencer, P. J., and Lucas, J., concurred.